UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| PAOLA ASCOLI, | ) |
| Plaintiff, | ) Civil Action No. |
| v. | ) 1:18-CV-00339 |
| MACON PROGRAM FOR PROGRESS, INC., | ) Jury Trial Demanded |
| Defendant. | ) |

## COMPLAINT

Comes now the Plaintiff, and complaining of the Defendant, alleges and says:

### NATURE OF COMPLAINT

1. This action is brought to remedy discrimination on the basis of disability in the terms, conditions, and privileges of employment, including right to be reasonably accommodated, protected by the Americans with Disabilities Act 42 U.S.C. § 12101 et.seq., as amended by the Americans with Disabilities Act Amendments Act of 2008.

### PARTIES, JURISDICTION, AND VENUE

2. Plaintiff, Paola Ascoli (hereinafter "Ascoli" or "Plaintiff"), is a citizen of and a resident of Franklin, Macon County, North Carolina.

3. Defendant, Macon Program for Progress, Inc., (hereinafter "MPP" or "Defendant"), is a Domestic Non-Profit Corporation operating in Franklin, Macon County, North Carolina and may be served with process through its registered agent, Clayton H. Ramsey, PO Box 700, Franklin, NC 28734.

1

4. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as there are issues of Federal Law.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (c) as Defendant is subject to the personal jurisdiction of this Court and because many of the acts giving rise to this action occurred in this District.

**ALLEGATIONS**

6. Ascoli began employment with MPP in or about March 2015.

7. At all times relevant to this complaint, Ascoli worked for MPP as a Teacher's Assistant in their Head Start program under the supervision of Bridgett Curtis ("Curtis").

8. Ascoli was qualified for her position as Teacher's Assistant based on education, training, and experience.

9. Ascoli suffers from an extreme and life threatening allergy to garlic and certain forms of exposure to garlic causes Ascoli to go in to anaphylactic shock, which requires the use of an Epipen and/or immediate medical attention and treatment. Ascoli's garlic allergy limits and impairs her ability to perform multiple major life activities when she is exposed to garlic. These major life activities were substantially limited as there were periods of time when she was completely or substantially unable to perform them as a result of her condition and, therefore, she was disabled within the meaning of the Americans with Disabilities Act 42 U.S.C. § 12101 et.seq., as amended by the Americans with Disabilities Act Amendments Act of 2008 (hereinafter "ADA"). The major life activities include caring for herself, performing manual tasks, eating, walking, standing, lifting, bending, speaking, breathing, concentrating, thinking, communicating, and working.

10. Ascoli informed MPP about her allergy as well as providing them with medical documentation at the time of her hire and requested that she be placed in an assignment outside of the kitchen area. In order to limit her exposure to garlic, after her placement she also requested that she be allowed to leave the classroom while the children ate lunch and that staff be required to use a microwave in a different building. Defendant was, at all times relevant, able to reasonably accommodate her restrictions. Further, Ascoli was willing to engage in the interactive process with Defendant to identify other possible or alternate accommodations, but Defendant refused.

11. On or about December 7, 2015, Ascoli suffered an allergic reaction, i.e. her disability was triggered, to garlic in the food that was served in the children's classroom. Ascoli made it clear to Curtis that she needed to leave the room, but Curtis refused to allow Ascoli to leave, even after Ascoli reminded Curtis about her allergy. Curtis responded by telling Ascoli to "hold her breath."

12. Following the incident, Sutton asked Ascoli what they could do to accommodate her needs. When Ascoli told Sutton that the kitchen should not add extra garlic to food, Sutton told her that the garlic was added for flavor because they were not allowed to use salt under their dietary guidelines. This was untrue because MPP had previously not added such large amounts of garlic to the food. MPP did not change their meal preparation procedures and continued to provide the children in Ascoli's room with food that contained added garlic.

13. On February 22, 2016, Ascoli suffered another allergic reaction, i.e. her disability was triggered, to garlic. She immediately left the classroom to escape the odor and use her Epipen, and was followed by Curtis. Ascoli asked Curtis to call 911, to which Curtis told Ascoli "You don't need it and there will be no need for an ambulance. You are coming with me instead."

Curtis pulled Ascoli back into the building and gave her a Bendaryl instead of allowing Ascoli to use her Epipen or call for medical assistance.

14. Ascoli met with Sutton a second time on March 4, 2016, and requested again that garlic not be added to the children's meals. Sutton responded to Ascoli's request by telling her "It's not worth my time dealing with this anymore. You are not a priority."

15. On March 21, 2016, Ascoli had a meeting with Sutton and Curtis to discuss a potential resolution to the situation. During the meeting, Sutton asked Ascoli if she had a reasonable accommodation request. Ascoli stated again that she was requesting the kitchen to not add garlic to the meals, and that the staff of MPP use the microwave in a separate building which was only a few steps away from its location. After her request, Ascoli was told by Sutton that they were denying her request because "it would take away everyone else's rights." When Ascoli questioned Sutton about her rights, Sutton responded by saying "You're just one person with a food allergy. There are more of them than you."

16. That same day, Ascoli completed an authorization for MPP to obtain medical documentation related to her allergy, per Sutton's request during the meeting. However, Ascoli had previously provided the relevant medical documentation to Sutton and Curtis and it was not acknowledged.

17. On April 5, 2016, Ascoli was called into a meeting with Curtis and Sutton and told that she was being terminated because she had an allergy that they could not control. However, when Ascoli returned to the facility on April 7, 2016 to retrieve paperwork related to unemployment benefits, Sutton changed the status of her termination to a "leave of absence" and provided her with a letter indicating that change (Letter attached hereto as Exhibit A). Even so, thereafter MPP terminated Ascoli's employment.

4

18. In addition to the reasonable accommodations listed above, Ascoli was willing to work with MPP to adjust any requested accommodations or to consider any alternative accommodation that Defendant might suggest, but Defendant refused to engage in the interactive process.

19. At all times from on or her hire until her termination, Ascoli could have performed all the essential functions of her job with a reasonable accommodation.

20. At all times relevant Ascoli was a "qualified employee" as defined by 42 U.S.C. § 12111(5)(A) of the ADA as she had been performing all of the essential functions or could have performed the essential functions with a reasonable accommodation.

21. MPP was a "covered" employer as defined in 42 U.S.C. § 12111(5)(A) of the ADA at all relevant times.

22. Ascoli filed a charge of discrimination on the basis of disability with the Equal Employment Opportunity Commission (EEOC) on or about August 15, 2016 (A redacted copy of the EEOC charge is attached hereto as Exhibit B).

23. Ascoli was issued a Cause Determination from the EEOC on January 31, 2018, which found reasonable cause to believe MPP violated the law (Determination attached as Exhibit C).

24. A conciliation meeting was held, which resulted in failure of conciliation. A Notice of Right to Sue was issued with a mailing date of August 21, 2018 (A redacted copy of the Notice is attached hereto as Exhibit D).

25. This action is filed within ninety (90) days of Ascolie's receipt of the Notice of Right to Sue from the EEOC.

## FIRST CLAIM FOR RELIEF
### (Violation of ADA on the basis of Discrimination)

26. Ascoli incorporates by reference the allegations of paragraphs 1 through 25 of this complaint.

27. Ascoli had a disability as defined by the ADA, at the time she was terminated from employment by Defendant and such termination was due to her disability.

28. Defendant's termination of Ascoli because of her disability even though she was otherwise qualified for her position violates the ADA.

29. Defendant's actions in terminating Ascoli are intentional, willful, and in reckless disregard for Ascoli's legally protected rights and justifies awarding punitive damages.

30. Defendant's discriminatory conduct caused and continues to cause Ascoli to suffer monetary loss and emotional distress.

31. Whatever reason Defendant claims as reason for termination is pretext.

32. Therefore, Ascoli now sues Defendant for violation of the Americans with Disabilities Act 42 U.S.C. § 12101 et.seq., as amended by The Americans with Disabilities Act Amendments Act of 2008.

## SECOND CLAIM FOR RELIEF
### (Violation of ADA for Failure to Provide a Reasonable Accommodation)

33. Plaintiff incorporates by reference the allegations of paragraphs 1 through 25 of this complaint.

34. Plaintiff was a "qualified employee" as defined by 42 U.S.C. § 12111(5)(A) of the ADA with a disability, which substantially limits a major life activity.

35. Defendant was aware of Plaintiff's disability and her need for reasonable accommodations and denied the reasonable accommodations.

36. Defendant intentionally violated the ADA by refusing to provide reasonable accommodations for her disability.

37. Defendant's discriminatory conduct caused and continues to cause Plaintiff to suffer monetary loss and emotional distress.

38. Therefore, Plaintiff now sues Defendant for violation of the Americans with Disabilities Act 42 U.S.C. § 12101 et.seq., as amended by The Americans with Disabilities Act Amendments Act of 2008 for failing to provide a reasonable accommodation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that:

A. The Court enter a judgment in favor of Plaintiff and against Defendant to include compensation for lost wages, lost benefits, and other economic losses that were proximately caused by the discriminatory/unlawful actions referenced herein.

B. The Court enter an award in favor of Plaintiff and against Defendant for punitive damages caused by its intentional, willful, wonton, and reckless actions in subjecting Plaintiff to disability discrimination.

C. The Court enter an award in favor of Plaintiff and against Defendant for great emotional distress, mental pain, suffering, stress, grief, worry, and mental anguish caused by Defendant's actions as alleged herein.

D. The Court enter an award in favor of Plaintiff and against Defendant for reasonable expenses and costs including attorney's fees.

E. This matter be tried by a jury

F. The judgment bear interest at the legal rate from the date of filing this action until paid.

G. Defendant be taxed with the costs of this action; and

H. The Court order such other and further relief as it may deem just and proper.

Respectfully submitted, this, the 20th day of November, 2018.

                                        /s/KIRK J. ANGEL_____
Kirk J. Angel, NCSB#: 33559
Attorney for Plaintiff
THE ANGEL LAW FIRM, PLLC
PO Box 1296 (28026)
109 Church Street N
Concord, NC 28025
Telephone: 704.706.9292
Facsimile: 704.973.7859
E-mail: kirk@mailalf.com